1   Scott E. Davis
    State Bar No. 016160
2   SCOTT E. DAVIS, P.C.
    20827 North Cave Creek Road, Suite 101
3   Phoenix, AZ  85024

4   Telephone:  (602) 482-4300
    Facsimile:    (602) 569-9720
5   email: davis@scottdavispc.com

6   *Attorney for Plaintiff David Nance*

7

8                 **UNITED STATES DISTRICT COURT**

9                    **DISTRICT OF ARIZONA**

10
                                        | Case No.
11  David Nance,                        |
                                        |
12              Plaintiff,              | **COMPLAINT**
                                        |
13       v.                             |
                                        |
14  Hartford Life and Accident Insurance|
    Company, SERCO, Inc., Group Long Term|
15  Disability Plan for Employees of SERCO,|
    Inc.,                               |
16                                      |
                                        |
17              Defendants.             |

18       Now comes the Plaintiff David Nance (hereinafter referred to as "Plaintiff"), by and

19  through his attorney, Scott E. Davis, and complaining against the Defendants, he states:

20                            *Jurisdiction*

21       1.       Jurisdiction of the court is based upon the Employee Retirement Income

22  Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f).

23  Those provisions give the district courts jurisdiction to hear civil actions brought to recover

24  employee benefits.  In addition, this action may be brought before this Court pursuant to 28

25

26

                                        -1-

1  U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of

2  the United States.

3                                                            *Parties*

4             2.      Plaintiff is a resident of Maricopa County, Arizona.

5             3.      Upon information and belief, Defendant SERCO, Inc. (hereinafter referred to

6  as the "Company") sponsored, subscribed to and administered a group disability insurance

7  policy which was fully insured and administered by Hartford Life and Accident Insurance

8  Company (hereinafter referred to as "Hartford").  The specific Hartford Policy is known as

9  group policy GLT-675957.  The Company's purpose in subscribing to the Hartford Policy

10  was to provide disability insurance for its employees.  Upon information and belief, the

11  Hartford Policy may have been included in and part of the Group Long Term Disability

12  Plan for Employees of SERCO, Inc. (hereinafter referred to as the "Plan") which may

13  have been created to provide the Company's employees with welfare benefits.  At all

14  times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined

15  by 29 U.S.C. §1002(1).

16             4.      Upon information and belief, the Company or Plan may have delegated

17  responsibility for the plan and/or claim administration of the Policy to Hartford.  Plaintiff

18  believes that as it relates to his claim, Hartford functioned in a fiduciary capacity as the

19  Plan and/or Claim Administrator.

20             5.      Upon information and belief, Plaintiff believes Hartford operated under a

21  conflict of interest in evaluating his claim due to the fact it operated in dual roles as the

22  decision maker with regard to whether Plaintiff was disabled as well as the payor of

23  benefits; *to wit,* Hartford's conflict existed in that if it found Plaintiff was disabled it was

24  also liable for payment of those benefits.

25

26

1    6.    The Company, Plan and Hartford conduct business within Maricopa County

2  and all events giving rise to this Complaint occurred within Maricopa County.

3                                    *Venue*

4    7.    Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28

5  U.S.C. §1391.

6                          *Nature of the Complaint*

7    8.    Incident to his employment, Plaintiff was a covered employee pursuant to

8  the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7).

9  Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to

10 §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits

11 he may be entitled to as a result of being found disabled.

12   9.    After working for the Company as a loyal employee, Plaintiff became

13 disabled on or about February 4, 2009 due to serious medical conditions and was unable to

14 work in his designated occupation as an Air Traffic Control Specialist.  Plaintiff has

15 remained disabled as that term is defined in the relevant Hartford Policy continuously since

16 that date and has not been able to return to any occupation as a result of his serious medical

17 conditions.

18   10.   Following his disability, Plaintiff applied for short term disability benefits

19 which were approved and have been exhausted.

20   11.   Plaintiff then applied for long term disability benefits under the relevant

21 Hartford Policy.  The relevant long term disability Policy provides the following definition

22 of disability:

23     Disability means You are prevented from performing one or more of the
       Essential Duties of:
24
       • Your Occupation during the Elimination Period;
25

26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

- Your Occupation, for the 24 month(s) following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and

- After that, Any Occupation.

12.     In support of his claim for long term disability, Plaintiff submitted to Hartford medical records from his treating physicians supporting his disability as defined by the relevant Hartford Policy.

13.     Hartford notified Plaintiff in a letter dated July 17, 2009 that it was approving his claim for long term disability benefits.

14.     Hartford informed Plaintiff in a letter dated July 22, 2011 it was terminating benefits beyond August 5, 2011 due to a lack of medical documentation supporting his inability to return to any occupation.

15.     Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the July 22, 2011 termination of his long term disability benefits and in support of his appeal, Plaintiff again submitted additional medical evidence to Hartford.

16.     As part of its review of Plaintiff's claim for long term disability benefits, Hartford obtained a medical record only "paper review" of Plaintiff's claim from Georgette Chekiri, M.D. who is a consulting physician for the University Disability Consortium (hereinafter "UDC").  As the attached interrogatory answers confirm (*See* Exhibit "A" to this Complaint), Hartford has a long business relationship with UDC providing the type of medical records reviews for Hartford which occurred in his case and Plaintiff believes UDC derives an important amount of annual revenue from this relationship which raises serious questions regarding bias and UDC's and/or its physicians' objectivity in rendering opinions.

17.     Upon information and belief, Plaintiff believes Dr. Chekiri is a long time consultant for the disability insurance industry.  Plaintiff further believes Dr. Chekiri has an

-4-

1   incentive to protect her own consulting relationships with the disability insurance industry,

2   UDC and/or Hartford by providing medical record only peer reviews which selectively

3   review or ignore evidence, such as occurred in Plaintiff's claim, in order to provide

4   opinions favorable to insurance companies and which supported the denial of Plaintiff's

5   claim.

6        18.   In a letter dated September 21, 2011, Hartford notified Plaintiff it had denied

7   his appeal for long term disability benefits under the Hartford Policy.  In the letter, Hartford

8   also notified Plaintiff that he had exhausted his administrative levels of review and could

9   file a civil action lawsuit in federal court pursuant to ERISA.

10        19.   Hartford failed to adequately investigate Plaintiff's case and failed to engage

11   Plaintiff and/or his treating physician in a dialogue during the appeal of his claim with

12   regard to what evidence was necessary so Plaintiff could perfect his appeal and claim.

13   Hartford's failure to investigate the claim and to engage in this dialogue or to obtain the

14   evidence it believed was important to perfect Plaintiff's claim is a violation of ERISA and

15   Ninth Circuit case law and a reason he did not receive a full and fair review.

16        20.   Upon information and belief, the Hartford denied Plaintiff a lawful, full and

17   fair review pursuant to ERISA for various reasons including but not limited to, failing to

18   consider all evidence submitted by Plaintiff or de-emphasizing the medical evidence

19   supporting Plaintiff's disability; disregarding Plaintiff's self-reported symptoms; failing to

20   consider all the diagnoses and/or limitations set forth in his medical evidence as well as the

21   combination of those diagnoses and impairments; failing to obtain an Independent Medical

22   Examination when the policy allowed for one; failing to engage Plaintiff in a dialogue so

23   he could submit the necessary evidence to perfect his claim and failing to consider the

24   impact the side effects from Plaintiff's medications would have on his ability to engage in

25   any occupation.

26

1    21.    In evaluating Plaintiff's claim on appeal, Hartford had an obligation pursuant

2    to ERISA to administer Plaintiff's claim "solely in his best interests and other participants"

3    which it failed to do. [1]

4    22.    Plaintiff believes the reason Hartford provided an unlawful review which was

5    neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due

6    to the dual roles Hartford undertook as decision maker and payor of benefits which created

7    an inherent conflict of interest.

8    23.    Plaintiff is entitled to discovery regarding the aforementioned conflicts of

9    interest of Hartford and any individual or entity such as UDC who was involved in the

10   review of his claim and the Court may properly weigh and consider evidence regarding the

11   nature, extent and effect of *any* conflict of interest which may have impacted or

12   influenced Hartford's decision to deny his claim.

13   24.    With regard to whether Plaintiff meets the definition of disability set forth in

14   the Hartford Policy, the Court should review the evidence in Plaintiff's claim *de novo,*

15   because even if the Court concludes the Plan confers discretion, the unlawful violations of

16   ERISA committed by the Plan and its administrators as referenced herein are so flagrant

17   they justify *de novo* review.

18   25.    As a direct result of Hartford's decision to deny Plaintiff's disability claim he

19   has been injured and suffered damages in the form of lost disability benefits, in addition to

20

21   [1] It sets forth a special standard of care upon a plan administrator, namely, that the
administrator "discharge [its] duties" in respect to discretionary claims processing "solely
22   in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it
simultaneously underscores the particular importance of accurate claims processing by
23   insisting that administrators "provide a 'full and fair review' of claim denials," Firestone,
489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it
24   supplements marketplace and regulatory controls with judicial review of individual claim
denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S.
25   2008).

26

1    other potential employee benefits he may have been entitled to receive through or from the

2    Plan and/or Company as a result of being found disabled.

3        26.    Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits,

4    prejudgment interest, reasonable attorney's fees and costs from Defendants.

5        27.    Plaintiff is entitled to prejudgment interest at the rate of 10% per annum

6    pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate his for

7    losses he incurred as a result of Defendants' unjustified denial of payment of benefits.

8        WHEREFORE, Plaintiff prays for judgment as follows:

9        A.    For an Order requiring Defendants to pay Plaintiff disability benefits and

10   any other employee benefits he may be entitled to as a result of being found disabled

11   pursuant to the Policy or Plan from the date he was first denied these benefits through the

12   date of judgment and prejudgment interest thereon, as well as any other employee

13   benefits he may be entitled to from the Plan and/or Company as a result of being found

14   disabled;

15       B.    For an Order finding that Plaintiff meets any definition of disability set forth

16   in the relevant Hartford Policy and directing Defendants to continue paying Plaintiff the

17   aforementioned benefits until such time he meets the conditions for termination of benefits;

18       C.    For attorney's fees and costs incurred as a result of prosecuting this suit

19   pursuant to 29 U.S.C. §1132(g); and

20       D.    For such other and further relief as the Court deems just and proper.

21                    DATED this 8th day of June, 2012.

22                    SCOTT E. DAVIS. P.C.

23                    By:    */s/ Scott E. Davis*
                            Scott E. Davis
24                          Attorney for Plaintiff

25

26